**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JACQUELINE M. JONES,
        Appellant,

    v.

UNITED STATES POSTAL SERVICE,
        Agency.

DOCKET NUMBER
CH-0752-15-0604-I-1

DATE: February 6, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Glenn L. Smith</u>, Esquire, Grand Rapids, Michigan, for the appellant.

<u>Deborah L. Lisy</u>, Esquire, Chicago, Illinois, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which sustained the agency's removal action. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2 The appellant was a Supervisor of Distribution Operations, EAS-17, assigned to the International Service Center and detailed to the agency's Cardiss Collins Processing and Distribution Center in Chicago, Illinois. Initial Appeal File (IAF), Tab 9 at 42-43, 227, Tab 16 at 79. She was assigned to Tour 3 and generally arrived around 2:30 p.m. Hearing Transcript (HT) at 382 (testimony of the appellant). S.W. was a Casual Mail Handler Assistant at Cardiss Collins, who called the appellant "Mom" or "God Mom." IAF, Tab 16 at 31, 89; HT at 329 (testimony of the appellant). She was assigned to Tour 2 and was scheduled to report at 1:00 p.m. IAF, Tab 16 at 88-91. When S.W. began having attendance issues, the appellant informed another Tour 3 supervisor that S.W. was her goddaughter and expressed an interest in ensuring S.W. remained employed despite attendance issues. HT at 213 (testimony of T.R.).

¶3 The acting Manager of Distribution Operations on Tour 2 regularly ran activity reports concerning her employees, allowing her to verify whether they were performing duties for the time they were paid. HT at 139-40 (testimony of P.M.). In doing so, she noticed the appellant was consistently entering S.W.'s

time in the Time and Attendance System (TACS) without S.W. being present. IAF, Tab 9 at 51; HT at 139-41 (testimony of P.M.). After confirming S.W.'s absence with other supervisors, she also noticed that the appellant entered S.W.'s time in TACS right before the end of the pay period. HT at 140. As a result, the agency began an investigation into the appellant's actions and moved S.W. to a work area on another floor away from the appellant's supervision; however, the appellant continued entering clock rings in TACS for S.W. HT at 113-14 (testimony of M.G.), 389-90 (testimony of the appellant).[2]

¶4    On March 21, 2015, the agency issued a notice of proposed removal on the charge of "Improper Recording and Adjustment of an Employee's Time and Pay Level In [] TACS" based on two specifications. IAF, Tab 9 at 57-65. Specification 1 alleged that the appellant manually input over 50 separate clock rings for S.W. in TACS on various dates between August and December 2014 without verifying S.W.'s attendance and without a Postal Service Form 1260 (PS-1260). *Id*. at 57-60. Specification 2 generally alleged that the appellant manually entered and approved a higher pay rate for S.W. without authorization on at least 27 separate occasions on various dates between August and October 2014 without a PS-1723. *Id*. at 60-61. After the appellant responded orally and in writing to the proposed removal, the deciding official sustained the charge and removed the appellant, effective July 24, 2015. *Id*. at 42-48; IAF, Tab 16 at 79-83.

¶5    The appellant filed an appeal with the Board, IAF, Tab 1, disputing the alleged facts and asserting that it was not common practice at Cardiss Collins to complete PS-1260s and PS-1723s, IAF, Tab 15 at 2-10. After a hearing, the administrative judge issued an initial decision sustaining both specifications and

---

[2] A clock ring is an entry of relevant times that employees on duty must record in their time and attendance records to be accurately paid. Employees at Cardiss Collins record the following four clock rings per shift: begin tour, out to lunch, return from lunch, and end tour. HT at 14-15 (testimony of P.S.).

affirming the removal. IAF, Tab 38, Initial Decision (ID) at 5-17, 20-17. Regarding Specification 1, she found that, because the appellant was not present at the facility during S.W.'s start time, did not check with S.W.'s supervisors before entering S.W.'s time into TACS, and took no other reasonable steps to determine whether S.W. was at work, the appellant improperly recorded and adjusted S.W.'s time in TACS. ID at 10. She also found that the agency demonstrated that PS-1260s were commonly used to document clock ring adjustments and that the appellant failed to use them for any of the time entries. ID at 10-11. Regarding Specification 2, the administrative judge found that the agency also had met its burden of showing by preponderant evidence that the appellant improperly entered higher-level pay for S.W. ID at 16-17.

¶6    The appellant has filed a petition for review arguing that the administrative judge misconstrued the charge. Petition for Review (PFR) File, Tab 5 at 6-9. She also argues that the agency failed to prove both that Cardiss Collins required the use of PS-1260s and that S.W. was not at work during the times for which the appellant gave her credit. *Id*. at 9-12. Finally, she challenges the appropriateness of the penalty of removal. *Id*. at 12-21. The agency has filed an opposition to the petition, to which the appellant has filed a reply. PFR File, Tabs 8, 11.

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge properly construed the charge.

¶7    In determining how charges are to be construed, the Board will examine the structure and language of the proposal notice. *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 17 (2004). In this regard, an adverse action charge usually consists of two parts: (1) a name or label that generally characterizes the misconduct; and (2) a narrative description of the actions that constitute the misconduct. *Walker v. Department of the Army*, 102 M.S.P.R. 474, ¶ 7 (2006). The Board may not split a single charge into several independent charges and then sustain one of the newly formulated charges, which represents only a portion

of the original. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). However, the prohibition against charge splitting depends on whether the charge is based on a single act or on more than one act. *Walker*, 102 M.S.P.R. 474, ¶ 7. A charge that is based on more than one act can be divided into multiple specifications or charges, each corresponding to the separate acts alleged. *Id*. Here, appellant's claim that the administrative judge improperly construed the charge is twofold. First, the appellant argues that the administrative judge improperly separated the acts of misconduct outlined in the charge. PFR File, Tab 5 at 6-7. Second, the appellant argues that the administrative judge erred in concluding that she improperly "adjusted" S.W.'s time in TACS. *Id*. at 7-9. We find that neither argument has merit.

*Separation of acts of misconduct*

¶8        The appellant argues that the administrative judge improperly relied on *Fairley v. U.S. Postal Service*, 63 M.S.P.R. 545 (1994), to allow the agency to split the charge into two specifications. PFR File, Tab 5 at 6; ID at 5 n.1. In *Fairley*, the Board held that, when a single charge contains two separate acts of misconduct that are not dependent on each other and do not comprise a single inseparable event, each distinct element may be sustained as a separate charge. 63 M.S.P.R. at 548-49. The appellant argues that the Board's holding in *Fairley* is inconsistent with the court's ruling in *Burroughs* and encourages the Board to reverse its position in *Fairley*. PFR File, Tab 5 at 6-7.

¶9        The court in *Burroughs* compared the facts of that case, which involved one charge with multiple elements, to a hypothetical situation in which more than one event or factual specification is set out to support a single charge. *Burroughs*, 918 F.2d at 172. This is precisely the situation that presented in *Fairley*, which ultimately relied on *Burroughs* in arriving at its conclusion. *Fairley*, 63 M.S.P.R. at 547-49; *see Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶¶ 15-16 (2006) (discussing the interplay between the holdings in *Burroughs* and *Fairley*), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir.

2012). Therefore, these two holdings are not inconsistent with one another but rather address two different structures of a single charge. Thus, we find no reason to revisit our holding in *Fairley*.

*"Adjustment" of time in TACS*

¶10     The appellant also argues that the administrative judge erred in interpreting the language of the charge when she found that the appellant improperly adjusted S.W.'s TACS report to show that she was working. PFR File, Tab 5 at 7-9. The appellant argues that she only "entered" S.W.'s time and did not "adjust" it, *id*. at 7-8, a position that the administrative judge found to be "disingenuous," ID at 12. On review, the appellant relies on testimony from her supervisor to demonstrate the difference between "entering" and "adjusting" time. PFR File, Tab 5 at 8-9. Upon our review of the hearing transcript, however, her supervisor never testified about what it meant to "adjust" a TACS report. HT at 100-30 (testimony of M.G.). Rather, she testified regarding her understanding of what it meant to "enter," "alter," or "change" a TACS report. HT at 131-32 (testimony of M.G.). Given that the appellant's argument relies on a technical interpretation of the word "adjust," and her proffered evidence of the appropriate interpretation of that does not include the word itself, we find this claim to be unpersuasive.

¶11     Further, because this is a narrative charge, it must be viewed in light of the accompanying specifications and circumstances and should not be technically construed. *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 14 (2013). Here, the narrative in the proposal notice makes clear that, when the appellant input incorrect entries, she thereby adjusted or changed the TACS report to reflect that S.W. worked hours that she did not work. IAF, Tab 9 at 57-60. The administrative judge found that, although the appellant may have "input" or "entered" S.W.'s time, the reality is that she adjusted or changed the TACS report to show that an employee was working. ID at 12. We agree. When the appellant input the incorrect entries, she did "adjust" the time, changing it from what otherwise would have resulted in an error in the TACS report and no pay for an

employee who was not working, to an entry that resulted in what looked like an errorless TACS report and pay for an undeserving employee. As such, we find the appellant's semantic distinction to be unconvincing. *See Cole v. Department of the Air Force*, 120 M.S.P.R. 640, ¶ 8 (2014) (stating that an agency is required to prove only the essence of its charge).

The agency proved its charge by preponderant evidence.

¶12    Generally, an agency is required to prove its charges in an adverse action appeal by preponderant evidence. 5 U.S.C. § 7701(c)(1)(B). A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q). On review, the appellant disputes the administrative judge's findings that the agency proved that completing a PS-1260 was required and that S.W. was not working during the times that the appellant recorded for her, and thus, the TACS entries were improper.[3]

---

[3] The majority of the appellant's petition for review challenges the administrative judge's findings concerning Specification 1. However, the appellant appears to summarily challenge the administrative judge's findings regarding Specification 2. PFR File, Tab 5 at 15-16. She disagrees with the administrative judge's "conclusions regarding the facts supporting this allegation" and reiterates hearing testimony and evidence that previously was considered by the administrative judge. *Id*. The administrative judge found that the agency proved that the appellant entered higher-level pay on S.W.'s TACS without formal authorization. ID at 16-17. We find that the appellant's generalized assertions on review concerning Specification 2 amount to nothing more than mere disagreement with the administrative judge's conclusions, and we find no basis to disturb these findings. *See, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

*Use of a PS-1260*

¶13    The appellant argues that she was not required to complete a PS-1260 following an adjustment of a TACS entry and that any claim that she was required to complete one contradicts agency policy. PFR File, Tab 5 at 10-11. The appellant points to the agency's F-21 Handbook, which permits supervisors to manually enter missing clock rings according to the supervisor's best estimate of the time that the clock rings would have been recorded and does not mention a PS-1260. *Id*. at 9-10. She also argues that on the back of the form is a statement indicating that its completion is voluntary. *Id*. at 10-11. Finally, she argues that she followed the lead of other coworkers who did not use a PS-1260. *Id*. at 11.

¶14    The administrative judge found that the use of PS-1260s was customary for record-keeping purposes when an employee does not have a time card and there is a clock ring error and that the appellant did not use any PS-1260s when recording S.W.'s time. ID at 10-11. In making this finding, she relied on the testimony of at least four witnesses. ID at 11-12. The appellant's supervisor testified that the form is a standard Postal Service form that was available on the agency's website and should be issued to anyone without a time card when entering time on their behalf. HT at 103 (testimony of M.G.). She also testified that she specifically mentioned the form in an email to the appellant. *Id*. at 104-05; IAF, Tab 16 at 66-67. Two supervisors, one of whom was another Tour 3 supervisor similar to the appellant, testified that they used the forms when employees were missing clock rings. HT at 173 (testimony of T.A.), 210-12, 215 (testimony of T.R.). A fourth witness testified that, although she has entered time without a PS-1260, she would always obtain one afterwards. HT at 156-57 (testimony of P.M.).

¶15    The administrative judge additionally found that the coworker relied upon by the appellant to bolster her assumption that PS-1260s were not used also was removed in 2015 on the charge of "Improper Record and Adjustment of an Employee's Time." ID at 11; HT at 246 (testimony of D.R.), 307-08 (testimony of L.A.). She also did not credit the appellant's testimony that supervisors on

Tour 3 at Cardiss Collins did not use the form. ID at 11-12; HT at 345-46, 351 (testimony of the appellant). We must defer to this determination, which is implicitly based upon the appellant's demeanor. *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (stating that the Board must defer to an administrative judge's determinations when they are "necessarily intertwined" with an analysis of the witness's demeanor).

¶16     After our review of the record, we find no basis to disturb the initial decision in this regard. Significantly, the charging document does not assert, and the administrative judge did not find, that completing a PS-1260 was required and that the appellant failed to meet that requirement. IAF, Tab 9 at 57-60; ID at 10. Instead, the proposal notice only acknowledges that there were no completed forms as evidence to prove the charge that the appellant improperly recorded S.W.'s time in TACS. IAF, Tab 9 at 57-60. Thus, although we agree with the appellant that the evidence does not demonstrate that PS-1260s were required, the agency's charge did not claim that it was required. Rather, the agency put forth several witnesses collectively asserting that PS-1260s customarily were used to document clock ring adjustments.

¶17     Concerning the F-21 Handbook, we note that it was not included in the record below or in the appellant's petition for review. HT at 251-52 (testimony of D.R.). Moreover, it is clear that the statement on the back of the PS-1260 relates to the agency's privacy policies and does not provide any guidance towards an employee's job duties or what customarily is expected of an employee serving in the appellant's capacity. Regardless of whether these documents permitted a voluntary entry of time reflecting a supervisor's best estimate of an employee's time, we find that the agency still established through witness testimony that it was more likely than not that the completion of a PS-1260 was customary and that the appellant failed to complete any in her entry of S.W.'s time. Accordingly, we find that the appellant has not provided any evidence on

review that would require a reversal of the initial decision's findings in this regard.

*Improper TACS entries*

¶18    The appellant also argues on review that the agency failed to prove that S.W. was not present at work during the times it alleges the appellant improperly recorded for her. PFR File, Tab 5 at 11-12. The appellant points to sworn statements and testimony from S.W. and four other witnesses to show that S.W. was present at work during the times for which she was paid. *Id*.; IAF, Tab 15 at 160-68. The appellant claims, moreover, that employees sometimes used a broken door or "piggybacked" with others to enter the facility and that sometimes employees would leave the facility with management's knowledge to move their cars in the parking lot, resulting in different door rings. IAF, Tab 15 at 29-33, 171; HT at 198 (testimony of C.P.).

¶19    The administrative judge found that the statements from the appellant's coworkers were "vague and conclusory" and, therefore, insufficient to establish that S.W. was present at work on time on the days in question. ID at 7-8. She further found that the agency's evidence regarding the door ring data contained sufficient information to indicate that S.W. arrived at the facility or left at times other than those entered by the appellant. ID at 8-9. She also considered the agency's evidence of available data concerning S.W.'s parking lot entrances and her entrances and exits from the building, and concluded that it was more likely than not that S.W. was absent from Cardiss Collins during times the appellant authorized her to receive pay. *Id.*

¶20    We agree with the administrative judge's finding that the agency met its burden. To prove the facts alleged in Specification 1, and, ultimately, the charge of "Improper Recording and Adjustment of an Employee's Time and Pay Level in [] TACS," the agency set out to show that the appellant recorded time for S.W. in TACS on various dates and times during which S.W. had not actually worked and that she failed to verify S.W.'s actual time. IAF, Tab 9 at 57-60. A witness for

the agency testified regarding S.W.'s pattern of not reporting to work on time and her observations on how the appellant recorded S.W.'s time. HT at 139-41 (testimony of P.M.). The agency also relied on clock and door ring records, both of which provided specific dates and times of S.W.'s entry or exit, and contrasted those records with S.W.'s TACS entries, which were entered by the appellant. IAF, Tab 9 at 58-60. Neither the appellant nor any of her witnesses disputed any particular dates or times; they simply provided explanations as to why the agency's data may not have reflected S.W.'s actual entry or exit. Regardless, assuming there was a genuine dispute as to whether S.W. was present at work at the times the agency asserts she was not, the instant adverse action is against the appellant, not S.W., and the administrative judge found that the appellant failed to take reasonable steps to verify S.W.'s attendance before adjusting her TACS and therefore improperly recorded and adjusted her time. ID at 9-10, 13, 17. This finding regarding the appellant's verification efforts has not been challenged on review, and, based on our review of the record, we find no reason to disturb it.[4]

¶21    Based on the foregoing, we find that the administrative judge properly weighed the evidence put forth by both parties and concluded that it was more likely than not that the appellant improperly recorded and adjusted an employee's time in TACS as charged. IAF, Tab 9 at 42-47, 57-60. The appellant's

---

[4] The appellant relies on *Wells v. Department of Defense*, 53 M.S.P.R. 637, 643 (1992), to emphasize that it is the agency's obligation to demonstrate that S.W. was not present for the hours for which she received credit and that merely establishing that S.W. was not seen at work does not establish that S.W. did not work the time in question. PFR File, Tab 5 at 11-12. The appellant's reliance on *Wells* is misplaced. In that case, the appellant was charged with improperly claiming overtime hours for himself without being present at work, *Wells*, 53 M.S.P.R. at 639, while in the instant case, the appellant is charged with improperly recording and adjusting another employee's time and attendance records, IAF, Tab 9 at 57. Moreover, the agency in *Wells* did not specify the dates on which it alleged the appellant improperly claimed undue overtime hours, *Wells*, 53 M.S.P.R. at 640, whereas in the instant case, the agency provided a detailed record of the dates and times in question, IAF, Tab 9 at 58-60.

arguments on review amount to a mere disagreement with the administrative judge's conclusions after weighing the evidence, and we find that the appellant has not provided a basis to disturb those findings. *See, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The administrative judge properly determined that the penalty of removal was within the bounds of reasonableness.

¶22        The appellant also challenges on review the agency's consideration of the *Douglas* factors when it assessed the penalty of removal.  PFR File, Tab 5 at 12-21; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). When all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all relevant factors and exercised management discretion within the tolerable limits of reasonableness.  *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 11 (2010). The Board will modify the agency-imposed penalty only when it finds the agency failed to weigh relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Douglas*, 5 M.S.P.R. at 306.

¶23        In the decision letter, the deciding official considered the nature and seriousness of the appellant's misconduct and concluded that the offense was "a serious one."  IAF, Tab 9 at 43.  He also considered that the appellant was a supervisor, and thus held to a higher standard of performance and conduct, and that her misconduct could not be tolerated by any employee, especially by a management employee. *Id*. at 44.  He further stated that he had lost confidence and trust in the appellant's ability to perform her duties on any level. *Id*.  He also considered the appellant's length of service and lack of discipline as favorable to the appellant, but he found that these factors were outweighed by the seriousness and severity of the misconduct. *Id*.  He also considered the adequacy and

effectiveness of alternative sanctions, but determined that removal was the appropriate penalty.  *Id*. at 45.

¶24    On review, the appellant argues that the deciding official and administrative judge did not properly consider alleged comparators.  PFR File, Tab 5 at 13, 18-20.  She also asserts that, although the deciding official and administrative judge concluded that the appellant was properly trained, her actual training was insufficient to put her on notice of what was required of her.  *Id*. at 17-18.  The appellant also argues that the deciding official provided conflicting information regarding the appellant's lack of remorse for her misconduct.  *Id*. at 16-17.

*Similarly situated comparators*

¶25    Regarding the appellant's argument that she was not treated similarly to other employees who engaged in similar conduct, the administrative judge found that none of the employees put forth by the appellant had enough similarity between both the nature of the comparators' misconduct and the other factors to lead a reasonable person to conclude that the agency treated similarly situated employees differently.  ID at 24.

¶26    The appellant claims that a coworker, L.A., initially was removed by the agency for similar misconduct but was, at the time of the hearing, employed by the agency, suggesting that he must have received a lesser penalty.  PFR File, Tab 5 at 18-19.  The administrative judge found that L.A.'s current employment was the result of a settlement agreement with the agency and that his current status had no bearing on whether he was an adequate comparator.  ID at 24 n.6. We agree.  When another employee receives a lesser penalty, despite apparent similarities in circumstances, as the result of a settlement agreement, the agency is not required to explain the difference in treatment.  *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 10 (2013).  Here, L.A. is not a valid comparator because, although he was removed from his position, he ultimately reached a settlement resolving the discipline.  HT at 246-47 (testimony of D.R.); ID at 24

n.6. Thus, the appellant's argument regarding L.A. as an alleged comparator has no merit.

¶27    The appellant also asserts that another employee, R.Y., only received a demotion for improper recording of clock rings in 2010.  PFR File, Tab 5 at 18-19; IAF, Tab 15 at 257-70.  The administrative judge found that there was not enough similarity between the appellant and R.Y. for him to be considered an adequate comparator because R.Y. was not alleged to have had a personal relationship with the employee whose time was entered improperly or to have engaged in misconduct related to the higher level of pay without authorization.  ID at 24.  We agree.  The record makes clear that pertinent components of the misconduct resulting in the appellant's removal were the special relationship between the appellant and S.W. and the unsupported increased pay of another employee.  IAF, Tab 9 at 42-43, 60-61.  Because R.Y. was not alleged to have engaged in either, the administrative judge appropriately concluded that he was not an adequate comparator.

*Whether the appellant was properly trained*

¶28    The appellant also argues that the deciding official improperly used her training as an aggravating factor.  PFR File, Tab 5 at 17-18.  She points to several courses listed in the proposal notice and relied upon in the decision letter regarding training for supervisors in Time and Attendance and the use of TACS, and claims that she did not participate in the listed courses.  *Id*.  She admits that she did complete a 4-hour TACS training class, but she claims that it was very limited and did not address the use of PS-1260s.  *Id*. at 18.

¶29    The appellant's training log lists the relevant courses that were detailed in the proposal notice.  IAF, Tab 9 at 231-33.  The appellant challenges these records by noting that, in the "Completion Progress" column corresponding to each training course, the column reflects "0.00" for the courses listed in the proposal notice.  PFR File, Tab 5 at 17-18.  During the hearing, however, the lead Manager of Distribution Operations testified that a "0.00" in the "Completion

Progress" column does not mean that the course was not completed but rather indicates that the course was completed in a classroom. HT at 19-22 (testimony of P.S.). From our review of the training log, it appears that the witness's testimony is confirmed by the log itself, as a significant portion of the courses that have a corresponding "0.00" for their "Completion Progress" are also listed as having occurred in the classroom, provided in the "Delivery Method" column. IAF, Tab 9 at 231-33. Further, the training log displays a checkmark in the "Pass" column when a course had been completed, and it is indisputable that the courses listed in the proposal notice and final decision have checkmarks in the pass column. *Id.*; HT at 19-22 (testimony of P.S.).

¶30 In addition to the training logs, the appellant's supervisor testified regarding the appellant's training. HT at 101, 106 (testimony of M.G.). She testified that, for the appellant to have access to TACS, she would have had to have been trained on the system. *Id.* at 106. She admitted that she did not provide her with specific training on PS-1260s, but she testified regarding an email sent to the appellant and several others wherein she highlighted a "best practices" suggesting that anyone missing a timecard should be given a PS-1260 to ensure that their time is entered properly. IAF, Tab 16 at 66; HT at 115-16 (testimony of M.G.).

¶31 We find that the record establishes that the appellant received proper training. Our review of the training record and relevant testimony indicates that it is more likely than not true that the appellant received the relevant training courses. Nonetheless, even if we assume that the appellant had not actually participated in the courses listed in the proposal notice, we still would reach the same conclusion. The record contains several uncontested confirmations of the appellant's training. For example, the appellant acknowledged during her investigative interview that she received TACS training consisting of a 1-day training class and a weeklong online course. IAF, Tab 9 at 225; HT at 51 (testimony of P.S.). She confirmed this again during the hearing. HT at 325-26

(testimony of the appellant). The appellant also stated in her written reply to the proposal notice that, although she had no formal training in supervision and timekeeping, she did have "limited training." IAF, Tab 16 at 79, 81. Additionally, in an internal email from the deciding official to another agency official, the deciding official stated that, during his oral interview of the appellant, the appellant confirmed that she had 4 hours of training. *Id.* at 19. Based on the foregoing, we find that the deciding official did not err in considering the issue of training as an aggravating factor.

*Whether the appellant demonstrated a lack of remorse*

¶32     In her petition for review, the appellant argues that the record contains conflicting information regarding whether she expressed remorse for her actions. PFR File, Tab 5 at 16-17. The removal letter states that the appellant failed to show any remorse. IAF, Tab 9 at 44. However, during her investigative interview, the appellant stated that "[t]his is a lesson learned" and that she now knows she needs to "follow through" and get the PS-1260. *Id*. at 223-25. Further, the appellant testified at the hearing that she regretted not following through to get the proper documentation. HT at 353 (testimony of the appellant). Importantly, the deciding official testified at the hearing that he would not refute the notion that the appellant told him that she learned from her actions and that she would use the proper forms in the future. HT at 254-55 (testimony of D.R.). Based on the record evidence, we find that the appellant's alleged lack of remorse should not have been considered as an aggravating factor. Although the deciding official and the administrative judge concluded that the appellant continuously shifted blame to others and deflected responsibility, ID at 26; IAF, Tab 9 at 43, the record is clear that the appellant exhibited some degree of remorse for her own actions. Thus, to consider this factor as an aggravating factor was an error.

¶33     Because the deciding official failed to appropriately consider the lack of remorse and potential for rehabilitation factor, a factor that he deemed relevant by explicitly discussing it in the decision letter, the agency's penalty determination

is not entitled to deference.  *Von Muller v. Department of Energy*, 101 M.S.P.R. 91, ¶¶ 18-21 (2005), *aff'd*, 204 F. App'x 17 (Fed. Cir. 2006), *and modified on other grounds by Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657 (2010), *overruled on other grounds by Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 9.  Nonetheless, we find that, due to the seriousness and severity of the appellant's misconduct and the nature of the appellant's position, duties, and responsibilities as a supervisor, the penalty of removal is within the bounds of reasonableness.  *Martin v. Department of Transportation*, 103 M.S.P.R. 153, 157 (2006) (stating that, in assessing whether the agency's selected penalty is within the tolerable limits of reasonableness, the most important factor is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities), *aff'd*, 224 F. App'x 974 (Fed. Cir. 2007).  Accordingly, we will not disturb the agency's selected penalty of removal.

¶34        We have considered the appellant's arguments on review but have concluded that a different outcome is not warranted.  Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.